Case number 22-3113, USA v. Christopher Sammons. Argument not to exceed 15 minutes per side. Mr. Shad, you may proceed for the appellant. Good morning, your honors. May it please the court. I have reserved four minutes for rebuttal, if I may. Thank you. I've raised three issues in my brief today, but I really want to only address one issue to the court's attention, and that is the issue of first impression in this court. Our argument is simple, that both the defense and the prosecution agree on the facts underlying counts 2 and 3. We concede that they occurred within the framework that the government suggested in both the indictment and its presentation at trial. So the question is, given that, does that conduct violate 18 U.S.C. section 2251 D.1? And we submit that it cannot, and it cannot because Congress never intended to capture this type of conduct within that particular statute. And so we begin that analysis with the plain language of the statute itself, and there are these operative, two operative... What's your ultimate, like, punchline theory? Is the punchline theory about that making notice, it always has to have a public component to it? Is that the way to think of it, public, non-public? Is it one-on-one's forbidden, but one to three is not? Do you have a rule that comes out of it? So the rule that comes out of this particular case is one-on-one private communications cannot. That is the rule that we propose today. That's the rule that has been actually only really decided by a couple of different circuits in this court, in the United States, and that is the Ninth Circuit and the Eleventh Circuit. But if the offer were for three to three people, it would satisfy the statute? Well, number one, it's not the case that I have before me, but... But we're going to have the next case. Exactly. And I would, if I were representing a defendant who was in a three-to-one situation, I might very well argue that it does not, but I know that this does not. And so the problem comes when you're getting to a specific number. Because if you don't attach a number to it, let's say that there is no number that's attached to it that a notice can mean anything regardless of whether it's one, 108, or 2,000, or three, then you have to concede that notice also applies to zero. And the way I say that is that if... Let's look at the scenario because we have the Internet now. People put their work on the cloud, which is the Internet, which is an international and national form of commerce. And they can put their journals on the Internet that are their own private musings, under password, under lock and key, intended for no one else to see, and no one else can see them potentially at all. But under the broad reading that the government suggests, that would also violate the statute. If it said, boy, I wish I could really buy some child pornography off of some people. That would violate the statute even though it goes to no other person. That's not obvious to me. I don't understand why that's a solicitation or advertisement. Well, again, it's a notice. Because the government's argument is that notice is any communication. And any communication... Mail to another.  That's the problem. Well, let's stick with the one-on-one problem. What about the reality that when they did this in 86, there's a little bit of a debate whether it applies to the Internet because it's just at its infancy. But they clearly are talking about a situation where the notice is mailed to someone else. I mean, it's a notice that can be mailed in interstate commerce, right? That's the language. And it's not until 90 that they add the computer and so forth. But isn't it quite obvious that... It's true you can mail a magazine to lots of people. I get it. That would be with advertisements in it. But surely you could mail a letter to one person soliciting the creation of child porn. So isn't the mailing suggest that one-on-one is frankly quite obviously true? Because letters... If it's a letter, it always goes to just one person. So here's the problem with that theory. And so, if I can take one step back. We would agree that Congress intended to eradicate child pornography offenses. Both when they started making the laws and in 1986 when they made these amendments. And so, in the sense that Congress attempted to cast a wide net, we agree that they attempted to cast a wide net to try to get these offenses. However, when we're looking... Up to then, all they were criminalizing was the actual production. And then they realized there were magazines and these things out there to solicit. And you wanted to stop the solicitation. That's correct. In the perfect sense. That's correct. And I'll even grant you that maybe the main solicitation issue was ads in magazines. That makes perfect sense to me. But the language would capture the letter that's sent to somebody saying, let's do this, or would you be willing to do this with me? Right. And so that... We would submit that a letter... One-on-one. A one-on-one letter, a one-on-one text message, a one-on-one phone call, a one-on-one email messaging back and forth or chat, none of that would fall under this particular statute. And the reason that I say that is that the government already has tools available to it to prosecute production, possession... Not in 86. Not in 86. I realize that's Judge Newsom's point, and it's true. You can look at it through the lens of 2022 and say, why are you worried? We can get them under this other statute. But that's not a helpful way to figure out what the law meant in 86. In 86, they had a lot of ground to cover. They didn't know what was coming in 90. I definitely agree with you there. But in 86, you have to look at, again, we cited to the legislative history here, and what were they trying to get to? And I think it's directly to your point. They were actually trying to get to the ads in the back of the seedy newsletters and the ads in the back of the seedy magazines that were giving a broadcast. It was a broadcast to people, not a person. And to the extent that there were letters, they were trying to get to letters that were, again, sent to thousands of people or hundreds of people. There's no evidence that they were trying to get to just one-on-one communications because that is... How about the evidence being the statute as opposed to legislative history? Something mailed that's a notice. Notices often are one-on-one. You have notice of rent due, notice of this or that. Those are often one-on-one. It's only if you look at notice in the broadest sense. And I think when we're arguing about what does the term notice mean, I think we're getting a field of what's the proper way to construct it statutorily. So I've cited to many definitions that are in like Merriam-Webster and different things. My worthy opponents also cited to many definitions of both notice and advertisement. Or the statute is not and. So notice must mean something different than advertisement. Isn't that true? Well, my argument is that it's a term of art, and it's a term of art that was used back in 1986. Notice or advertisement was a... Well, first of all, the statute is notice or advertisement, right? That's correct. Okay, it's not notice and advertisement. Yes. And so my response to that is the reason that it has to mean a term of art that they're together is that there's... Even though it's an or. Even though it's an or. Even though it's an or, it only means and? Well, it's no. It doesn't mean and. It's the same as if... I cite in my reply brief. I think it's in my reply brief too. The term black and white. It's clear as black and white. We don't define black as a single term without that, because the phrase itself means something different than any of the components of it. And so when you look at the statute, it also says any in front of notice, right? So if you're not going to use this as a phrase, notice or advertisement, then you can't apply any to advertisement, and now you've got problems that it doesn't include all advertisements. And so it has to be a phrase. Any is notice or advertisement. It's a term of art. I've cited several of the other statutes that use this as that term of art back in 1986. We may not look at it that way now, but certainly the notice, you put notice in a newspaper of this, or a legal notice in the newspaper that you're going to do a X, Y, Z. It was a term of art that was used back then. It's the same thing though. Notice and advertisement kind of means the same thing. In that phrase, they're just being repetitive to make a point. Well, in actuality, so if you look at the Franklin case, which is the Seventh Circuit case, it cites to a Merriam-Webster definition of advertisement, and there's six definitions in there, and two of them say notice. Two of them define it as notice. So, yes, there is overlap there. It's not complete overlap. There's also ones that don't. But there's also the canon to try to give independent meaning to each word. I would say that's between the two possibilities, it being duplicative or trying to give independent content to each word. We'd probably, particularly since they're preceded by any, be more inclined towards trying to give some independent content to each word. Wouldn't that be a reasonable approach? I've cited in my brief to the Yates case out of the Supreme Court, which holds that a fish is not a tangible object. And it's not a tangible object within the context of the Sarbanes-Oxley Act. I see my time's up if I can just finish my thought. You can't look at the word in isolation. You can't look at it in what it means today in 2022. You have to look at it in the context of the broader statute, and in this case the broader D-1, which clearly was intended to get to advertising offenses. That was the title of what Congress said it was about when they first passed it. This is the word solicitation. That was my question, if I could have it. Do you put any weight to the fact that the title of the act is an act to amend Title 18 to ban the production and use of advertisements for child pornography or solicitations for child pornography? There the Congress, in the title anyway, talks about solicitations, and that's separate from advertising, isn't it? It is, and solicitations can mean private and they can mean public, and we run back into the same issue. The only thing I will say about that is that there's an overall rule that says federal criminal law should be strictly construed because the federal government only has limited authority to get to criminal law as a matter. It's a state matter. And this court, if it strictly construes the statute, has to come up with the answer that advertising and notice are a term of art that means more than a one-on-one private communication. Thank you. You get your full rebuttal. Thank you. We'll hear from the government. Morning. Morning. May it please the court, Kevin Kohler on behalf of the United States. The court should affirm the defendant's convictions on all counts here, and I'll focus my attention on counts two and three, as did opposing counsel. Here, Salmon sent messages to an individual he found on the taboo fantasies group on Whisper, which is an online application for people who are interested in sharing fantasies about sexually harming children. Let's go to one of the points Mr. Shadd really pushes, which is the phrase notice or advertisement is a phrase of art. You think of them together, and when you think of them together, they really are a form of advertising or public. And, you know, I think he's right that you could – that there are uses of the phrase that suggest that meaning. What do we do with that? There's, I think, a couple of important points there. One is construing something as a term of art goes against several different principles of statutory construction. Most notably, words should be given their plain and ordinary meaning. In this case, notice or advertisement joined in the disjunctive rather than the conjunctive, as Judge Griffin pointed out. There's nothing in the statute, nothing in the legislative history that seems to indicate this should be construed as a term of art rather than given their plain, ordinary meaning. And, of course, if you construed it as a term of art and changed it from notice or advertisement to notice and advertisement, you're essentially reading the term notice out of the statute, and that goes against the rule of surplusage, as the Tenth Circuit highlighted in Franklin. The Third Circuit also reached the same conclusion in a case involving the sentencing guidelines, saying, look, you can't put them together. They have to be given both their independent meaning here. Notice, we know by the plain meaning, the dictionary definitions, reaches beyond just public notices and ordinary usage includes one-to-one targeted notices. But the Eleventh Circuit took a different approach, didn't it, in Caniff? The Eleventh Circuit did take a different approach in Caniff. And there's a couple points I would take issue with the Eleventh Circuit, which I think indicates why the Ninth Circuit and the Tenth Circuit and the Seventh Circuit and Grise and the Third Circuit within the sentencing guidelines, which is a slightly different construct. The Eleventh Circuit in Caniff looked at specific kind of usage examples from the dictionary definitions to create ambiguity. There can be public notices. The government does not contest that. I think the statute clearly reaches public notices as well. But the ordinary plain meaning is any warning or intimation or something to come. That's relevant because we're not saying there still has to be a warning to somebody else. Mr. Chad's example where there's no intended notification to somebody else, that would not be a notice because the notice is not any communication. It's a warning or intimation of something to come. So Caniff, by kind of limiting it to the ordinary usage rather than looking at the term any, I think unnaturally construes the use of any notice as Congress intended it to be. I know Caniff also got a little hung up on the phrase making any notice. That doesn't necessarily roll off your tongue. I think that might be true. And they said, well, what if it was give or send notice? I think an important point to consider is that D1 needs to be read in conjunction with D2, which is the interstate nexus. So D1, the term making, publishing, and printing, those are all talking about how you're bringing the notice into existence. You can publish it, you can print it, or you can make it. Once you have this notice, it still has to be transported. And so the transportation is kind of, if you use give or sending, yes, that might be a more natural reading, but you're creating tension with the transportation prong in D2. Is that why they didn't use the word solicitation? So I was puzzled why the word solicitation doesn't appear either instead of notice or as an independent thing since it's in the earlier title. They're clearly getting at solicitations. Is your point that that would run into this interstate nexus? I think there are two points to that. I think that's a good point, Chief Judge. One is it might run up against the interstate nexus, which we're looking at transportation. You don't want to create tension with that. The other point is D1 is dealing both with seeking or offering child pornography as well as seeking or offering participation in a sexual act to create additional child pornography. And so a solicitation might be read just to limit it to seeking, whereas notice, I think, is given the more broader reading to make sure that it's clear that it's encompassing both seeking or offering. I see. You mentioned, not to be too finicky, but you mentioned the possibility of using legislative history to construe it. And that's always struck me as a little strange because we're not supposed to look at legislative history unless the statute's ambiguous. And, of course, ambiguity is what triggers the rule of lenity. So it seems like a strange, weird concession on the government's part that you must think there's enough ambiguity for us to look at legislative history. And if that's true, why doesn't that show that we should use the rule of lenity? I apologize if I misspoke. Our position is definitely that the statute is unambiguous and legislative history would not be appropriate to consult in this situation. If you were to look at it, you would see that it involves and is specifically targeting these computer-type transportation of messages back to each other. But I think here the plain meaning, which is, again, any warning or intimation, and that matches up with the ordinary usage. It includes one-to-one notices. I think you mentioned you can make and send a notice to an employer that you're leaving a job. You can send a notice that you're going to raise rent. You can send a notice to a tour operator that you have a medical condition that needs attention. If you forget to return your library books, chances are the library will send you an overdue notice. Those are all one-to-one communications. Do you think in 1986 this applied to the computer? I know after 1990 it does, so it doesn't matter to this indictment and so forth. But what's the evidence that applied to the computer from 1986 to 1990? If we were to transport back in that time period and we were in between 1986 and 1990, that might be a case where you would have to look at the legislative history. But someone in jail based on legislative history? I think if we were in 1987 and we were all listening to Huey Lewis and the news, then I think the situation might be different and the rule of lenity might be reached there. I think that's why we have the amendments that came in. I think it actually came in 1988, so I think it was a year after, and the 1988 amendments added computer to that interstate nexus in order to resolve any possible ambiguity. And that's the situation. That's the interstate nexus under which Mr. Sammons was indicted and tried and found guilty. I did want to just briefly address the statutory gap. I know this is definitely a statutory gap that this statute was designed to fill. That existed in 1986. It also exists very much today as well in that not this statute is targeting the notice. And the distinct harm that this statute is getting at is that any notice or advertisement, even if it's that one-on-one group posted publicly, is extending and perpetuating the child pornography marketplace. So if I send a notice to one person, that's expanding the marketplace. It's going to drive demand. That's going to increase potential future crimes. Not every notice is going to qualify as an attempted distribution or attempted receipt or attempted production. There can be very adequate. What do you say about his idea of the journal? Did you hear his point about the journal? Yes. So he said it was zero, that it was not meant. Would the government indict in that situation? The government would definitely not indict in that situation, and I think there are two reasons for that. One is the ordinary meaning of notice means any warning or intimation. If you've written something that is never intended to give to somebody else, it's my own personal, maybe it's part of my counseling session, if that is not designed to put someone else on notice that I actually have child pornography or I'm looking to participate in a joint exploitation of a child, that is not a notice. And in that way, notice is narrower than any communication. And also I think there would be serious interstate nexus concerns there, that if you've posted that, even if you've posted it on the Internet, I'm not sure that that quite fits within what D2 commands, which is that it has to be transported within some interstate facility. But I think both of those would remove the zero person. And I think the other point that Judge Griffin brings up is if you have a notice, if I'm sending it to 10, if I'm sending it to 20 people, if I'm sending it to 50 people, that's a slightly more widespread dissemination. A savvy child pornographer now using all these tools can send one notice to 20 or 30 people, but he can also send 20 individual notices by opening up these direct messages and essentially create group chats of two people. It's the same harm. It's the same damage that's being done. And if we just limit notice to dissemination to more than one person, you've created a loophole where the savvy pornographer can now send the notices, expand the marketplace, can direct other pornographers to where they might find child pornography. So a lot of the child pornography now is hosted on the dark web. A lot of what has to happen for the pornography to be distributed is you have to know where to look. So pornographer A can send an individual notice to pornographer B. He said, hey, the government shut down the Playpen website. Here's the new website. Here's how you get to it. That's a notice. It's an individual notice. He sent one on one. He could send it in a group. It would still have the same effect. The person who sent that notice, notably, may not be involved in the subsequent distribution or receipt, so it may not be appropriate to charge that person under attempted receipt or attempted distribution. He is still cause to harm. It's the harm very similar to the harm that Congress was trying to stamp out in 1986 when they passed the statute. If there are no further questions. Thank you. Chad. Thank you, your honors. So the problem comes into the quote-unquote ordinary meaning of the word and the ordinary meaning of the phrase. I've already shown, and the government actually concedes, that there are numerous meanings in the dictionary for the word notice, some of which are public and some of which are private. So this court is tasked with determining out of those myriad terms, and I think the Franklin case might list 14 of them, which one did Congress choose back in 1986? Because you can't just say, well the ordinary meaning is this and we're at the end, because we can't agree that there's one ordinary meaning to the word notice. The Franklin case talks about it can be a book report, it can be a review of a play. There's all kinds of weird things that notice can mean in the English language. So what did Congress mean? And it's why you get past the first step. It's why you can't stop at this is clearly unambiguous what it is, because there's so many meanings to it. Once you get past that first step of ordinary meaning and get into legislative history, now you have to deal with the fact that Congress meant something very specific. And the harm that I think is palpable here is that, let's say I don't have any child pornography. I've never made it. I've never done anything with child pornography. And I text to my friend, boy I'd really like to buy some child pornography. And my friend texts me back and says, no, you're gross. I've violated the statute according to the government. And I can be prosecuted 15 to 30 years for that text. And that's what the broad reading of notice means if you agree with the Ninth Circuit in this case. So we would ask that you vacate counts two and three on this basis, not violating, not making the statute unconstitutional, but saying on these particular facts it doesn't meet the statutory. Thank you. All right. Thank you, Mr. Schatt, as always. Thank you, Mr. Kohler, for your helpful briefs and arguments. It's a really interesting case with a circuit split, so we're all grateful for good briefs and good arguments. So thank you very much. The case will be submitted and the clerk may call the next case.